No. 20-10184

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

        v.

ROSS FARCA,

    Defendant-Appellant.

———————————————

**BRIEF FOR THE UNITED STATES AS APPELLEE**

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
NO. 19-CR-00643-JST
—————————————

**STEPHANIE M. HINDS**
Acting United States Attorney

**MATTHEW M. YELOVICH**
Chief, Appellate Section, Criminal Division

**KIMBERLY HOPKINS**
Assistant United States Attorney

450 Golden Gate Ave., 11th Floor
San Francisco, CA 94102
(415) 436-6991

**Attorneys for Plaintiff-Appellee**
May 12, 2021              **UNITED STATES OF AMERICA**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................iii

JURISDICTION, TIMELINESS, AND BAIL STATUS..........................2

ISSUES PRESENTED...........................................................................2

STATEMENT OF THE CASE.................................................................3

    A.    Offense Conduct....................................................................3

    B.    Charges and plea ..................................................................6

    C.    Sentencing ...........................................................................6

        1.    The Presentence Investigation Report .......................6

        2.    The Sentencing Hearing..............................................7

SUMMARY OF ARGUMENT ................................................................9

ARGUMENT ........................................................................................11

I.    FARCA WAIVED HIS RIGHT TO CHALLENGE THE DISTRICT
COURT'S AUTHORITY TO ORDER RESTITUTION............................11

    A.    Standard of review..............................................................11

    B.    Farca waived his challenge to the legality of restitution in this case..11

II.    ON THE MERITS, RESTITUTION WAS LAWFUL .................................15

    A.    Restitution was authorized by the VWPA .........................15

    B.    Restitution was authorized by the MVRA .........................16

    C.    Restitution was authorized as a condition of supervised release ........20

CONCLUSION.....................................................................................22

Statement of Related Cases.................................................................23

i

Certificate of Compliance ...........................................................................24

# TABLE OF AUTHORITIES

## Federal Cases

*Fort Bend County v. Davis*, 139 S. Ct. 1843 (2019) ............................................... 14

*Kontrick v. Ryan*, 540 U.S. 443 (2004) .................................................................. 14

*Shields v. United States*, 273 U.S. 583 (1927) ....................................................... 13

*Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998) ........................ 14

*United States v. Batson*, 608 F.3d 630 (9th Cir. 2010) ......................... 15, 17, 20, 21

*United States v. Bussell*, 504 F.3d 956 (9th Cir. 2007) ......................................... 11

*United States v. Collins*, 854 F.3d 1324–33 (11th Cir. 2017) .............................. 17

*United States v. Depue*, 912 F.3d 1227 (9th Cir. 2019) (en banc) ................. 12, 13

*United States v. Fu Sheng Kuo*, 620 F.3d 1158 (9th Cir. 2010) ........................... 11

*United States v. Gagarin*, 950 F.3d 596 (9th Cir. 2020) ...................................... 17

*United States v. Gianelli*, 543 F.3d 1178 (9th Cir. 2008) ..................................... 13

*United States v. Hughey*, 495 U.S. 411 (1990) ...................................................... 16

*United States v. Kelly*, 874 F.3d 1037 (9th Cir. 2017) .......................................... 21

*United States v. Luis*, 765 F.3d 1061 (9th Cir. 2014) ..................................... 17, 18

*United States v. Myers*, 804 F.3d 1246 (9th Cir. 2015) ........................................ 13

*United States v. Perez*, 116 F.3d 840 (9th Cir. 1997) (en banc)...................... 12, 13

*United States v. Peterson*, 538 F.3d 1064 (9th Cir. 2008) ............................... 11, 19

*United States v. Razzouk*, 984 F.3d 181 (2nd Cir. 2020) ...................................... 17

*United States v. Reed*, 80 F.3d 1419 (9th Cir. 1996) ............................................. 15

*United States v. Ritchie*, 858 F.3d 201 (4th Cir. 2017) ............................. 17, 19-20

*United States v. Sukhtipyaroge*, 394 F. Supp. 3d 951 (D. Minn. 2019) .......... 17-18

*United States v. Warren*, 610 F.2d 680 (9th Cir. 1980) ......................................... 14

## Federal Statutes

18 U.S.C. § 3663(a)(1)(B)(i)(I) ................................................................. 16

18 U.S.C. § 1001 ........................................................................ *passim*

18 U.S.C. § 1001(a)(2) ................................................................. 6

18 U.S.C. § 1365 ........................................................................ 16

18 U.S.C. § 1593 ......................................................................... 7

18 U.S.C. § 2248 ......................................................................... 7

18 U.S.C. § 2259 ......................................................................... 7

18 U.S.C. § 2264 ......................................................................... 7

18 U.S.C. § 2327 ......................................................................... 7

18 U.S.C. § 3231 ..................................................................... 2, 14

18 U.S.C. § 3583(d) ................................................................. 20

18 U.S.C. § 3663 .................................................................. 7, 15

18 U.S.C. § 3663(a)(2) ............................................................. 16

18 U.S.C. § 3663(b)(1)–(4) ....................................................... 19

18 U.S.C. § 3663A ................................................................. 8, 17

iv

18 U.S.C. § 3663A(b)(1)–(4) ................................................................. 19

18 U.S.C. § 3663 ..................................................................... 9, 21

21 U.S.C. § 853(q) ...................................................................... 7

21 U.S.C. § 856(a) ..................................................................... 16

28 U.S.C. § 1291 ....................................................................... 2

## FEDERAL RULES AND SENTENCING GUIDELINES

9th Cir. R. 27-13(d) .................................................................... 2

USSG § 5E1.1(a)(1) .................................................................... 7, 8

No. 20-10184

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

       v.

ROSS FARCA,

    Defendant-Appellant.

_____

**BRIEF FOR THE UNITED STATES AS APPELLEE**

Defendant-Appellant Ross Farca lied in an application to join the United States Army. The lie worked: he was admitted, trained, and housed at the Army's expense for 36 days before being discharged. He later pleaded guilty to one count of making a false statement to a government agency. He was sentenced to time served and ordered to pay restitution to the Army in the amount of $17,832, representing the daily cost to the Army from those 36 days of expenditures on Farca. Farca affirmatively told the district court that it had discretion to impose restitution, and the district court adopted his urged amount. He now appeals, arguing that the district court ordered restitution without statutory authorization. Because his appeal is waived and, in any event, meritless given multiple statutory authorizations permitting restitution in this case, Farca's appeal should be denied.

## JURISDICTION, TIMELINESS, AND BAIL STATUS

The district court (Hon. Jon S. Tigar) had jurisdiction under 18 U.S.C.

§ 3231. Farca was sentenced on May 28, 2020, and judgment was entered on June

1, 2020. CR 49, 50; ER-3–10, 66.[1] Farca filed a timely notice of appeal on June 5,

2020, and an amended notice of appeal on June 15, 2020. CR 51, 54; ER-171–73.

This Court has jurisdiction under 28 U.S.C. § 1291.

Farca was sentenced to a term of time-served, and a release order was

entered on May 28, 2020. CR 48; SER-3. Farca is currently in state custody

pending trial on separate charges.

## ISSUES PRESENTED

1.      Whether Farca waived his current claim on appeal that the district

court acted without statutory authorization, where Farca said, at sentencing, that

ordering restitution was within the court's discretion despite expressing knowledge

that he could object as to the authorization under a different statute, and the court

adopted Farca's urged loss figure.

2.      If reaching the merits, whether the district court had statutory

authority to order restitution in the amount of actual loss to the victim of Farca's

---

[1] "CR" refers to the docket in the underlying criminal case, "ER" to Farca's excerpts of record, "SER" to the government's supplemental excerpts of record, "AOB" to Farca's opening brief, and PSR to the Presentence Investigation Report, filed under seal pursuant to Circuit Rule 27-13(d).

offense following Farca's conviction for material false statements to a government agency, in violation of 18 U.S.C. § 1001.

## STATEMENT OF THE CASE

### A.    Offense Conduct

On June 22, 2017, Ross Farca completed an online background check application (SF-86) to join the Army at the U.S. Army Recruitment Center in Mountain View, California.  PSR ¶ 6.  The SF-86 form is used by the United States Government to conduct background investigations for national security positions. *Id.*  The SF-86 explicitly states that (1) all questions on the form must be answered truthfully and (2) the penalties for inaccurate or false information include prosecution under 18 U.S.C. § 1001.  *Id.*  Farca electronically signed and dated the form, and he marked on the form that he understood the instructions and penalties for inaccurate or false statements.  *Id.*

Farca provided false information regarding his mental health history on the SF-86 form.  PSR ¶ 7.  The specific question asked:  "In the last seven years, have you consulted with a health care professional regarding an emotional or mental health condition or were you hospitalized for such a condition?"  *Id.*  Farca checked "No."  *Id.*  In fact, as he then knew, he had been in regular contact with a psychiatrist since 2011, and on at least three occasions between May 2014 and November 2015, had requested a letter of clearance from his psychiatrist to join the

3

United States military. *Id.* at 15. The psychiatrist refused to provide a letter of clearance because she did not feel Farca was mentally stable to serve in the military. *Id.*

Farca was accepted into the United States Army, and on August 28, 2017, he reported to Fort Benning, Georgia, for basic training. PSR ¶ 8. A few days later, Farca was arrested for assaulting a fellow trainee. *Id.* The Army admitted Farca to a psychiatric unit for approximately 12 days for a mental health evaluation. *Id.* On October 3, 2017, Farca was discharged from the Army. *Id.* The discharge paperwork cited, "failed medical/physical/procurement standards" and noted "erroneous enlistment; medical condition disqualifying for military service, with no medical waiver approved." *Id.*

During an investigation into separate charges ultimately filed in Contra Costa County Superior Court, the Federal Bureau of Investigation (FBI), in connection with the Concord Police Department, arrested Farca on June 10, 2019. PSR ¶ 11, 36. During a search of his residence, agents found, among other things, U.S. Army discharge paperwork. *Id*.

During the investigation, the FBI also obtained Farca's medical records from Kaiser Medical Group. PSR ¶ 12. According to the medical records, Farca was diagnosed with Autistic Disorder (high functioning), and although he was not officially diagnosed, his records also reflect that he suffered from Obsessive

4

Compulsive Disorder.  *Id.*  Farca was in regular contact with a psychiatrist at Kaiser since 2011, and he was initially prescribed various medications and treatments for his disorders.  *Id.*

FBI agents also obtained records from the Regional Center of the East Bay (RCEB), a community based, non-profit corporation under contract with the California Department of Development Services.  PSR ¶ 13.  The RCEB worked with Farca to provide community integration and treatment services.  *Id.*

On January 16, 2016, Farca had an annual review with his RCEB case manager.  PSR ¶ 14.  During the review, Farca discussed his intent to join the military and explained he first needed to be off his medication for six months and obtain a note from his psychiatrist.  *Id.*  Farca admitted to his case manager that he did not think he would be able to get a note from his psychiatrist.  *Id.*

On January 4, 2017, during another annual review, Farca told his case manager he was refocusing on joining the United States military but would need a letter of clearance from his psychiatrist or RCEB.  PSR ¶ 15.  The case manager told Farca that she would not provide a letter of clearance.  *Id.*  The record reflects that between May 2014 and November 2015, Farca requested a letter of clearance from his psychiatrist on at least three occasions, and during each request, Farca's psychiatrist refused to provide a letter of clearance because she did not feel Farca was sufficiently mentally stable to serve in the military.  *Id.*

**B.     Charges and plea**

On November 19, 2019, the government charged Farca in a one-count

Criminal Complaint with making a false statement to a government agency, in

violation of 18 U.S.C. § 1001(a)(2).  CR 1; SER-4.  On December 3, 2019, a

federal grand jury issued a one-count indictment charging Farca with the same

offense.  CR 15; ER-166–70.  On April 9, 2020, Farca pleaded guilty to the

indictment without a plea agreement.  CR 39; ER-164.

**C.     Sentencing**

*1.     The Presentence Investigation Report*

On May 15, 2020, the Probation Officer filed a Presentence Investigation

Report (PSR) regarding Farca.

The PSR included information about the loss that the United States Army

suffered as a result of Farca's conduct.  The cost from first contact, basic training,

and up until early discharge was approximately $44,737.  PSR ¶¶ 9–10.  This was

the amount that the Probation Officer used for United States Sentencing Guidelines

(USSG) loss calculation purposes.  PSR ¶ 10.  The amount includes $25,337

(funding for enlistment bonus, military pay, loan repayment program, operation

and maintenance army funding for civilian pay, advertising, recruiter support,

military training, automated data processing, and communications), $1,800 (cost to

test applicant aptitude and related costs, all costs related to the medical exam, costs

associated with the administrative processing of applicants, personal costs, and facilities costs), and $17,600 (costs include fixed and variable costs, student salary and associated benefits, pay and no-pay for direct instruction training overhead, pay and non-pay for indirect support, and all appropriations). *Id.*

Farca disputed the Army's loss calculations, believing the loss amount attributable to him was less than $40,000. PSR Addendum ¶ 3.

Noting that the parties disagreed as to the loss amount attributable to the defendant under the USSG, the PSR relied upon the government's estimated loss figures to calculate the recommended advisory guidelines range. PSR Addendum ¶ 4. As for restitution, the PSR specifically stated that "[in] the case of an identifiable victim, the Court shall enter a restitution order for the full amount of the victim's loss, if such order is authorized under 18 U.S.C. § 1593, § 2248, § 2259, § 2264, § 2327, § 3663, or § 3663A, or 21 U.S.C. § 853(q). U.S.S.G. § 5E1.1(a)(1)." PSR ¶¶ 73–74.

### 2.     *The Sentencing Hearing*

On May 28, 2020, the district court conducted sentencing. ER-11. The district court heard argument as to the loss amount for purposes of calculating the advisory Guidelines range and argument regarding restitution.[2]  *Id*.  In support of

---

[2]  The district court also heard extensive argument about supervised release conditions. CR 55; ER-11.

its position, the government relied on the Victim Impact Statement that the Army submitted, estimating that the financial loss to the Army was more than $40,000, and that restitution was appropriate because the Army was directly and proximately harmed as the result of Farca's criminal conduct. ER-21–23.

Farca presented information to support his claim that the loss to the Army was less than $40,000. ER-32–37. Specifically, Farca presented a defense investigator's interview of military personnel and research from available resources. *Id.* Farca argued that the loss amount should be "the amount that was spent on him, the amount that was attributed to his being in the army. That was the amount of $17,832 for the days that he was in the military." ER-34. Farca also argued that the district court should not order restitution, as it was not clear as to whether there was a loss of property under 18 U.S.C. § 3663A of the Mandatory Victim Restitution Act (MVRA). ER-41. However, Farca acknowledged that the government "certainly has discretion, if not under that section, to order restitution under 3663(a)(1)(A), but, again, it should be awarded for only losses for which his conduct was an actual and proximate cause. . . ." *Id.*

The district court adopted Farca's urged calculation and found the loss amount to the Army was $17,832. ER-53. The court also ordered that Farca pay restitution to the United States Army in the amount of $17,832. ER-62. The court

reasoned that it was appropriate for Farca "to repay at least some of the loss that he caused to the government. . . ." ER-56–57.

On June 1, 2020, the district court issued its judgment. ER-3–10. The district court imposed a mandatory condition of supervision ordering Farca to make restitution in accordance with 18 U.S.C. §§ 3663 of the Victim and Witness Protection Act (VWPA) and 3663A, or any other statute authorizing a sentence of restitution. ER-5. The court also imposed a special condition of supervision ordering Farca to pay any restitution and special assessment that is imposed by the judgment and that remains unpaid at the commencement of the term of supervised release. ER-7. Lastly, the district court ordered Farca to pay restitution, and affirmed that the total loss amount to the Army was $17,832. ER-8.

## SUMMARY OF ARGUMENT

The district court's order should be affirmed.

First, Farca waived his current challenge to the legality of the restitution order when he stated at sentencing that the court had discretion to order restitution under the VWPA while maintaining that such authority might not exist under the MVRA. Under this Court's cases, Farca's conduct exhibits an intentional relinquishment of a known right—the right to object to the legality of restitution in his case—under one statutory scheme while maintaining his objection under another. The court adopted his urged amount. As a result, he cannot now assert

9

that the district court in fact did not have discretion to enter the restitution order, and his appeal must be dismissed.

Second, if reaching the merits, there was no error in the district court's restitution order following Farca's conviction for a violation of 18 U.S.C. § 1001. The court was authorized to order restitution under any of three independent statutory regimes: the VWPA, the MVRA, and as a condition of supervised release. The court had the discretion to order restitution under the VWPA because the conviction was an offense set forth in Title 18. Even if the court had not cited the VWPA, which it did in the judgment, the court was required to order restitution under the MVRA because the conviction constituted an offense against property within the plain language of the MVRA. Since there is no real dispute that Farca's criminal conduct directly and proximately caused a loss to the Army, restitution under the MVRA was therefore also permissible. Finally, even if Farca's challenge under the MVRA or VWPA had merit, the supervised release statute unambiguously authorizes federal courts to order restitution as a condition of supervised release for *any* criminal offense for which supervised release is properly imposed. Accordingly, this Court should affirm, since even if the restitution order was not authorized under the VWPA or MVRA, it was authorized as a condition of supervised release—a condition that Farca does not challenge on appeal at all, and

thus does not argue in his opening brief failed to provide the requisite legal authority for the restitution order.

## ARGUMENT

## I. FARCA WAIVED HIS RIGHT TO CHALLENGE THE DISTRICT COURT'S AUTHORITY TO ORDER RESTITUTION

### A. Standard of review

This Court reviews de novo the legality of a restitution order, and, if the order falls "within statutory bounds," reviews the restitution amount for abuse of discretion. *United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1162 (9th Cir. 2010); *United States v. Peterson*, 538 F.3d 1064, 1074 (9th Cir. 2008). Factual findings supporting an order of restitution are reviewed only for clear error. *United States v. Bussell*, 504 F.3d 956, 964 n.9 (9th Cir. 2007).

### B. Farca waived his challenge to the legality of restitution in this case

At sentencing, Farca waived his current claim that the district court did not have discretion to order restitution in his case. Specifically, Farca argued that it was "not clear" if restitution "would fall under" the MVRA, but then explicitly "acknowledge[d] that the Government certainly has discretion, if not under that section, to order restitution under 3663(a)(1)(A) . . . ." ER-41. Farca then disputed the amount to be ordered—not the legality of restitution altogether. *Id.* (urging that restitution "should be awarded for only losses for which his conduct was an actual and proximate cause, and here we have at length gone to show that those losses are

11

minimal -- not minimal, but certainly minor compared to what the Government is claiming."). In imposing sentence, the court agreed with Farca, finding he "has the better of the argument" on loss, accepting his urged loss of $17,832, and ordering restitution in that amount. ER-53, 56–57.

This record constitutes waiver of Farca's sole claim on appeal: that the district court had no statutory authority to order restitution of $17,832 in his case. AOB 11–22. "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (en banc) (internal quotation marks and emphasis omitted). While a mere failure to object is insufficient evidence of waiver and subjects a claim instead to plain error review, where, as here, there is evidence in the record that the defendant was aware of controlling law and relinquished his claim, waiver applies. *See id.* at 1233 (citing *United States v. Perez*, 116 F.3d 840 (9th Cir. 1997) (en banc)). In this case, Farca acknowledged that he might have a legal objection to the statutory basis for restitution, but in the very same sentence affirmatively stated that the district court had discretion to order restitution in his case under another of the federal restitution statutes. ER-41. His current argument that the district court in fact did not have discretion to order restitution under any federal restitution statute

is therefore waived, as he knowingly relinquished that claim at sentencing. *See Depue*, 912 F.3d at 1233; *Perez*, 116 F.3d at 845.[3]

In urging otherwise, Farca claims that "the entry of an erroneous [restitution] order is not subject to waiver." AOB 13. He cites cases regarding contractual plea agreement waiver provisions being unenforceable where a sentence exceeds the statutory maximum or a restitution order exceeds the statutory authority. *Id.* But he cites no authority for the idea that his own conduct at sentencing could not have waived this claim, or subjected it to the invited error doctrine—a different issue than whether one can waive in a plea agreement a future "illegal" restitution order. *See United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008) (holding that defendant waived ability to challenge restitution order by failing to file direct appeal from judgment and distinguishing case law regarding enforceability of appeal waivers). He urged the district court to impose restitution in a certain amount and said the court could do so under the VWPA. The court did just that.

---

[3] Alternatively, Farca's conduct constitutes invited error: he urged the court that it had discretion to order restitution under the VWPA and urged a specific lower amount, which the court ultimately imposed. He now complains on appeal that the court should not have done what he asked it to do. "[A] court cannot be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request." *Shields v. United States*, 273 U.S. 583, 586 (1927). Under this Court's invited error jurisprudence, Farca's appeal should be denied. *See United States v. Myers*, 804 F.3d 1246, 1254 (9th Cir. 2015) (invited error doctrine "prevents a defendant from complaining of an error that was his own fault" by deeming it "waived and therefore unreviewable" where defendant invited the error and relinquished a known right (internal citations omitted)).

Farca cannot now be heard to call such action erroneous on appeal. His appeal should be dismissed.

Finally, Farca argues that his claim is a jurisdictional one and thus not subject to waiver or forfeiture. AOB 3, 10–13. Farca uses the term "jurisdiction" throughout his brief, implicitly equating a supposed lack of statutory authorization for a particular restitution order with a deprivation of jurisdiction. "Jurisdiction is a word of many, too many, meanings." *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 90 (1998). "In recent years, the [Supreme] Court has undertaken to ward off profligate use of the term." *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1848 (2019) (internal quotation marks and alteration omitted). "Clarity would be facilitated if courts and litigants used the label 'jurisdictional' . . . only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). In this case, there is no question that the district court had jurisdiction over this defendant and this criminal case involving an offense against the United States. 18 U.S.C. § 3231 ("district courts . . . have original jurisdiction . . . of all offenses against the laws of the United States"); *United States v. Warren*, 610 F.2d 680, 684 n.8 (9th Cir. 1980) ("In this circuit . . . a court has exclusive personal jurisdiction over any party who appears before it"). Whether the court exceeded its statutory authority in imposing

restitution, like a claim that a court imposed a sentence unauthorized by statute, does not speak to the court's subject matter or personal jurisdiction over Farca, but rather the substantive correctness of its rulings. As such, Farca's argument that this case involves questions of jurisdiction should be rejected, as should his further argument that he cannot have waived his claim since it is jurisdictional—it is not.

## II. ON THE MERITS, RESTITUTION WAS LAWFUL

Even if not waived or deemed invited error, Farca's claim fails on the merits because the district court could lawfully impose restitution in this case under three independent bases: the VWPA, MVRA, and as a condition of supervised release.

### A. Restitution was authorized by the VWPA

The VWPA, 18 U.S.C. § 3663, "allows the district court" to order a defendant "convicted of an offense under Title 18 of the United States Code" to "make restitution to any victim of such offense." *United States v. Reed*, 80 F.3d 1419, 1420 (9th Cir. 1996) (internal quotation marks omitted); *accord United States v. Batson*, 608 F.3d 630, 633 (9th Cir. 2010) (discussing different restitution statutes). In this case, Farca was convicted of an offense under Title 18 (Section 1001) and therefore the court had the authority to order restitution to any victim of his offense. The Army was indisputably a "victim" of Farca's false statement: the Army was "directly and proximately harmed as a result of the commission of" Farca's offense in that it lost $17,832, the amount it spent on Farca while he was in

15

the Army under false pretenses. 18 U.S.C. § 3663(a)(2) (defining victim). As Farca correctly recognized at sentencing, ER-41, the court therefore had discretion to order him to pay restitution to the Army under the VWPA. Accordingly, the court's decision to do so was not outside its jurisdiction or statutory authority.

Insofar as Farca challenges the amount of restitution as an abuse of discretion, he of course urged the precise amount that the court adopted. ER-34. Nevertheless, the restitution amount imposed by the court was correct. Under the VWPA, the court, in determining whether to order restitution, should consider the amount of the loss sustained by the victim as a result of the offense. 18 U.S.C. § 3663(a)(1)(B)(i)(I); *see also United States v. Hughey,* 495 U.S. 411, 413 (1990) (holding restitution may be awarded under the VWPA "only for the loss caused by the specific conduct that is the basis of the offense conviction"). Here, the loss amount should be the $17,832 that was spent on Farca for the 36 days he was in the Army under false pretenses.

## B. Restitution was authorized by the MVRA

Alternatively, the MVRA independently authorized the restitution award in this case. That statute requires courts to order restitution to any person who suffered a physical injury or pecuniary loss as a direct or proximate result of the commission of (1) a crime of violence, (2) an offense against property under 21 U.S.C. § 856(a) or Title 18, or (3) an offense under 18 U.S.C. § 1365, relating to

the act of tampering with consumer products. *Batson,* 608 F.3d at 633; *see* 18 U.S.C. § 3663A.  When it enacted the MVRA, Congress sought to build on the progress achieved by the discretionary VWPA in making "significant strides . . . toward a more victim-centered justice system," and identified the MVRA's primary goal to ensure that the loss to crime victims is recognized, and that they receive the restitution they are due.  *United States v. Ritchie*, 858 F.3d 201, 210 (4th Cir. 2017); *see* S. Rep. No. 104-179, at 12–13 (1995); *accord United States v. Gagarin*, 950 F.3d 596, 607 (9th Cir. 2020) (concluding the purpose of restitution is to put the victim back in the position he or she would have been but for the defendant's criminal conduct); *United States v. Razzouk*, 984 F.3d 181, 187 (2nd Cir. 2020) (holding the statute is designed to make victims of crime whole, to fully compensate these victims for their losses, and to restore these victims to their original state of well-being.)

The MVRA does not define "offense against property."  *See* 18 U.S.C. § 3663A.  However, the Ninth Circuit has previously held that "'against property' means infringing on a victim's property interest."  *United States v. Luis*, 765 F.3d 1061, 1065 (9th Cir. 2014); *see also United States v. Collins*, 854 F.3d 1324, 1332–33 (11th Cir. 2017) (the phrase "offense against property" refers to offenses by which a defendant intentionally interferes with or infringes on the property interest of another); *United States v. Sukhtipyaroge,* 394 F. Supp. 3d 951, 957 (D.

17

Minn. 2019) (a defendant who derives an unlawful benefit from the property of another interferes with the other's property interest within the meaning of the MVRA). In sum, offenses that "involve[] pecuniary loss . . . constitute[] an offense against property." *Luis*, 765 F.3d at 1066. This Court has held that where a defendant's "offense[] occasioned these losses," it constitutes an offense against property. *Id.*

Here, the case involved an offense against property under Title 18. A violation of Section 1001 is indisputably an "offense." That violation directly caused the Army in this case to suffer a pecuniary loss of $17,832—which is indisputably "property" under this Court's cases, *see Luis*, 765 F.3d at 1066—that it spent on Farca under false pretenses. Indeed, Farca lied at least in part in order to get that very property—admission to the Army and the associated expenditures of new membership. This was not a lie to a government agency to avoid detection or dodge some liability—it was a lie to get the Army to house and train him. The offense of making the false statement resulting in a loss to the Army was thus an "offense against property." The restitution order should be affirmed.

Farca tries to avoid a common sense reading of the statutory language by claiming that the district court erred in ordering restitution for the Army's cost of recruiting and training Farca as that loss was not included in the categories of losses authorized by the VWPA and MVRA. Farca's argument fails. The VWPA

18

and MVRA specify four categories of losses to whom and for what restitution may be ordered: 1) an offense resulting in damage to or loss or destruction of property of a victim of the offense; 2) an offense resulting in bodily injury to a victim; 3) an offense resulting in bodily injury also resulting in the death of the victim; and 4) reimbursement to a victim for lost income and necessary child care, transportation and other expenses related to the participation in the investigation or prosecution of the offense. *See* 18 U.S.C. § 3663(b)(1)–(4); 18 U.S.C. § 3663A(b)(1)–(4). In this case, the category of loss applicable is a "loss . . . of property." *See* 18 U.S.C. § 3663(b)(1); 18 U.S.C. § 3663A(b)(1). Nothing in the language of the statutes, or in the case law cited by Farca interpreting the VWPA or MVRA, supports Farca's claims to the contrary, and he ignores the numerous courts that have applied the MVRA specifically to Section 1001 cases like his.

For example, in *United States v. Peterson,* 538 F.3d 1064, 1077 (9th Cir. 2008), the defendants were convicted of making false statements to the Housing and Urban Development ("HUD") in violation of Section 1001. On appeal, this Court upheld the district court's order of restitution under the MVRA, finding that the false statements were the direct and proximate cause of the losses. *Id.* at 1077. Nowhere in its opinion did the Court question the applicability of the MVRA to Section 1001 offenses. *See also Ritchie*, 858 F.3d at 207 (holding defendant's false statement on HUD form is an offense against property under the MVRA as it

directly and proximately caused harm to successor lender and thus lender was a "victim" within the meaning of the MVRA).

Here, Farca lied on the SF-86 Form and was admitted into the Army under false pretenses. As a result of Farca's lie, the Army suffered a loss of $17,832, representing the daily cost to the Army from the 36 days of expenditures on Farca. If he had never been admitted to the Army or had been admitted but the Army discovered the lie before Farca was actually on base and in training, then this would be a different case. However, the Army discovered Farca's lie after he was admitted, and Farca deprived the Army of a property interest in money. Therefore, restitution for the loss amount to the Army was proper.

The plain language of the MVRA, as well as the various decisions in which courts have applied the MVRA to Section 1001 offenses, establish that the district court had authority to impose restitution for the money that the Army spent as a direct and proximate result of Farca's false statement offense.

**C.    Restitution was authorized as a condition of supervised release**

The VWPA and MVRA are not the only statutory sources of authority for orders of restitution by federal courts. *Batson,* 608 F.3d at 633. Another crucial statute is 18 U.S.C. § 3583(d), which authorizes courts to order restitution as a condition of supervised release for any criminal offense for which supervised release is properly imposed. *See Batson,* 608 F.3d at 636.

Here, during the sentencing hearing, the district court ordered that Farca pay restitution to the United States Army in the amount of $17,832. ER-62. In the judgment, the district court specifically imposed a mandatory condition of supervision ordering Farca to make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A, or any other statute authorizing a sentence of restitution. ER-5. The court also imposed a special condition of supervision ordering Farca to pay any restitution and special assessment that is imposed by the judgment and that remains unpaid at the commencement of the term of supervised release. ER-7. This independent basis for the restitution award in this case goes unchallenged in Farca's opening brief, constituting a waiver of any claim of error on this point. *United States v. Kelly*, 874 F.3d 1037, 1051 n.9 (9th Cir. 2017) (defendant waives argument "by failing to raise it in his opening brief"). But regardless, such a restitution order is lawful: as this Court explained in *Batson*, the district court could order restitution as a condition of supervised release for any criminal offense for which supervised release properly had been imposed.

21

## CONCLUSION

For the reasons set forth above, this Court should affirm.

Dated: **May 12, 2021**                    Respectfully submitted,

                                           STEPHANIE M. HINDS
                                           Acting United States Attorney

                                           MATTHEW M. YELOVICH
                                           Chief, Appellate Section, Criminal Division

                                           s/ Kimberly Hopkins
                                           KIMBERLY HOPKINS
                                           Assistant United States Attorney

                                           Attorneys for Plaintiff-Appellee
                                           UNITED STATES OF AMERICA

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
## FORM 17. STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**    20-10184 _____

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[  ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case is:

**Signature**  s/ Kimberly Hopkins _____    **Date** May 12, 2021
*(use "s/[typed name]" to sign electronically-filed documents)*

23

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**   __20-10184_____

I am the attorney or self-represented party.

**This brief contains <u>5,013</u> words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**   __s/ Kimberly Hopkins__      **Date** <u>May 12, 2021</u>
*(use "*s/[typed name]*" to sign electronically-filed documents)*

24